CHANCERY.

*Case* 101.

## Vimont *vs* Stitt, &c.

ERROR TO THE BOURBON CIRCUIT.

*Lost bonds. Partial performance. Frauds and perjuries.*

*Oct.* 29.

JUDGE BREOK delivered the opinion of the Court.

This opinion should have been published as of the fall term, 1845, but was overlooked.

The case stated.

STITT and Batterton filed their bill against Lewis Vimont, to recover the amount of a note for $5000, which they alledge he had executed to them, and which they had lost or mislaid.

The Court decreed the relief sought, and Vimont has brought the case to this Court.

The facts appearing in the record, so far as we deem important to notice them, are these:

In March, 1840, John S. Vimont, a son of Lewis, being in laboring circumstances, mortgaged his estate to

Stitt, William Marshall, John Throckmorton, Lewis Vimont, Franklin B. Vimont, A. S. Miller, and Samuel Williams, to indemnify them as his sureties for a large amount. In May following, John S. Vimont and Lewis Vimont mortgaged to said sureties, except said Lewis, as a further indemnity, a house and lot in Millersburg. The title to the lot was in Lewis Vimont, but the house had been built and other improvements made upon it by his son, John S. The mortgage provides that the house and lot are not to be sold unless the property previously mortgaged by the said John S., should prove insufficient to indemnify his sureties; and also further provides that they were not to be sold unless they brought $5000.

In August, 1840, the mortgagees, by a power of attorney, constituted Stitt and Batterton their agents and attornies in fact, to take into their possession the mortgaged property, and make such arrangement and agreement with John S. Vimont for the sale thereof, as they might deem necessary, and to appropriate the proceeds to the payment of the mortgage debts. Under this power Stitt and Batterton, with other property, sold the house and lot in Millersburg, and as they alledge, Lewis Vimont became the purchaser, as the highest bidder, at the price of $5000, and executed his note for the same, payable in one, two and three years, with interest.

Lewis Vimont answers, denies that he made the purchase and gave the note, as alledged. He denies that it was necessary to sell the house for the payment of the mortgage debts, and insists that there was no obligation or memorandum in writing, evidencing the pretended sale, and relies in bar of the relief sought, upon the statute of frauds and perjuries.

The complainants, in an amended bill, exhibit and tender to the defendant, Lewis, a deed executed by them on behalf of all the mortgagees, for the house and lot.

Without stopping to detail the testimony and all the facts and circumstances appearing in the record, which have brought us to the conclusion, it will be sufficient to say, that we are satisfied the complainants, as the agents and attornies of the mortgagees, with the consent and approbation of John S. and Lewis Vimont, exposed the

house and lot to sale at public auction, and that Lewis Vimont became the purchaser at the price of $5000, for which he executed his note according to the terms of the sale. We are further satisfied, from the fact that John S. and Lewis Vimont were present and consented to the sale, that it was necessary for the indemnity of the mort. gagees. It is further in proof, that shortly after the sale, which was in the fall of 1840, Lewis Vimont obtained possession of the house and lot, and has since continued to possess and enjoy the same. John S. Vimont and all the mortgagees were before the Court, and it appeared from the testimony of John S. Vimont, that he had no interest in the premises.

In view of these facts, the important and rather novel question is presented, whether the statute of frauds and perjuries is a bar to the relief sought by the complainants. We are inclined to concur in the reasoning and conclusion of the Circuit Judge. that it is not.

The complainants have not come into a Court of Equity for the purpose of enforcing a parol contract for the sale of land; they merely seek the aid of the Chancellor in the collection of a note, which they held on Vimont, for $5000, and which they alledge has been lost. The loss of the note gives the Court jurisdiction to enforce its collection by a decree in *personam* against the obligor. Their ground for relief is made out by proving the existence and loss of the note. It was not necessary that they should ask the Chancellor specifically to execute the contract for the sale of the house and lot, nor that they should manifest their willingness and ability to comply with the contract, till the obligor or purchaser resists the relief sought, upon the ground that the consideration of the note was the parol purchase of the house and lot. The question then arises, whether the complainants may not well and succesfully obviate this objection, by showing that the consideration, for which the note was given, had in fact been received by the obligor, in the possession and enjoyment of the premises, and by manifesting their willingness and ability, and in fact tendering performance on their part, of the residue of the contract. At law, had a suit been brought upon the note, the obli-

A mortgagor became the purchaser of real estate sold by the agent of mortgagees, gave his note for the price, and took possession; the note given for the price was lost; suit in chancery was brought by mortgagees to recover the amount of the lost bonds, defendant relied upon the statute of frauds and perjuries—Held that the defence could not avail, as the suit was not brought on a parol contract for a sale of land and as the consideration had been, in part, received, and the mortgages tendering a conveyance to the defendant of their title under the mortgage.

gor could not, upon the facts now appearing in the case, have succesfully resisted a judgment. He could only have shown a partial failure of consideration ; and had he sought relief against the judgment in equity, the Chancellor, upon a tender of performance by the obligors, as in this case, would have refused to vacate the contract, which is not void but binding in conscience, and have turned him out of Court. The attitude of the obligor is in effect the same in this case. It is true the obligees have not obtained a judgment at law, but irrespective of the contract, they show themselves entitled to a decree for the amount of the lost note. The obligor resists a decree by virtually asking the Chancellor to vacate the contract, which he refuses to do, upon the ground that it has been partially performed, and that the obligees tender performance of the residue.

In an equitable point of view, there is certainly no difference in the attitude of the parties in the two cases.

Although the decree may virtually operate as an enforcement of the parol contract, yet it is not rendered in a suit brought upon it, or to enforce it. As a matter of defence, relied upon by the defendant, the Court held it insufficient, and refused to vacate it, and we think correctly.

But there is still another view of the case, upon which it is urged by counsel, and with much plausibility, that the decree may be sustained.

It is admitted that the legal title to the property, is in Lewis Vimont, but for the incumbrance of the mortgage. That incumbrance he had a right and could remove by the mere payment of the amount, which the mortgage was made to secure. Upon such payment the title would immediately revest in him. If then the amount of the lien had been certain, and Vimont had paid it to the mortgagees, it cannot be doubted that it would as effectually have extinguished the lien without any contract or memorandum in writing, as with; and that a chancellor in such case, if deemed necessary, would have compelled a formal surrender of the legal title. If the extent of the lien was uncertain, could not the parties have agreed the amount and accepted it, and would not the effect in that

VIMONT
vs
STITT, &c.

Will not the payment of the mortgage debt or a sum agreed on by mortgagee and mortgagor as the sum due or demandable upon the mortgage security, by parol agreement, extinguish the mortgage and authorize the Chancellor to decree a release of the mortgage—Qu.

case be the same as if the amount had been certain, and expressed in the mortgage? We perceive no sensible distinction. In this case the extent of the lien upon the premises is not certainly ascertained and expréssed in the deed. But the mortgagees in effect agree that the note of Vimont for $5000, when paid shall discharge it. That it shall not exceed that sum, and if when ascertained, the true amount falls short, the excess of the $5000 shall be refunded. We are not prepared to say upon the payment of the note, that the chancellor could not, with propriety, have pronounced the lien discharged and have compelled the mortgagees to release or surrender the legal title.

The mortgage is but an incident to the debt, and the transfer of the debt, even by parol, transfers the benefit of the mortgage. The payment of the debt, no matter whether to the mortgagee or the assignee or propietor, discharges and extinguishes the mortgage. If then the payment of the debt to the proprietor, who has acquired it by parol, discharges the mortgage, no satisfactory reason is perceived why a direct parol arrangement made between the parties, for its discharge, by the payment of a certain sum or for a specified consideration, would not be valid, unaffected by the statute of frauds.

We are strongly inclined, therefore, to the opinion that upon this view of the case the decree may also be sustained.

The objection that no affidavit was made as to the loss of the note, we think, is not available. The bill contains an express allegation that the note had been lost or misplaced, and both the complainants make affidavit that the facts stated in the bill, so far as stated from their personal knowledge and belief are true; such an affidavit is deemed sufficient.

Wherefore the decree is affirmed.

*Thornton* for plaintiff: *Robertson & Johnson and Smiths* for defendants.